## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

MISTY TERHORST,

      Plaintiff,

v.                                  CASE NO: 8:07-cv-1931-T-26TBM

IDEARC MEDIA SALES-WEST INC.,

      Defendant.

_____/

## O R D E R

Before the Court are cross-motions for summary judgment: (1) Defendant's Motion for Summary Judgment (Dkt. 21), Defendant's Statement of Undisputed Facts (Dkt. 22), supporting affidavits and depositions (Dkts. 23-25, 27, 29, 30, 32, 33, 37-39), Plaintiff's Memorandum in Opposition and submissions (Dkts. 53, 57 & 58); and (2) Plaintiff's Motion for Summary Judgment (Dkt. 35), Plaintiff's Statement of Disputed Facts (Dkt. 50), supporting counter-affidavits (Dkts. 41-47), Defendant's Response in Opposition to Motion (Dkt. 51), Defendant's Response in Opposition to Statement of Undisputed Facts (Dkt. 52), Defendant's Objections to Evidence Submitted (Dkt. 48), and Plaintiff's Response to Defendant's Objections to Evidence.  (Dkt. 60).  After careful consideration of the motions, the Court concludes that both motions should be denied.

## BACKGROUND

Plaintiff brings this action to recover damages for compensation to Plaintiff arising from Defendant's alleged violations of the Family and Medical Leave Act, 29 U.S.C. §

2601, et.seq. (FMLA).  At the time of Plaintiff's termination on August 31, 2007, Plaintiff

was employed by Defendant as a premise sales representative.  The position required

solicitation of listings and advertising in the telephone directory published by Defendant

for the Tampa area.

Plaintiff reported to work on the morning of August 23, 2007; however, after she

left to meet a customer, she did not return to work for a meeting with her supervisor, Kelli

Lusk.  Defendant will produce evidence that Plaintiff's performance was below par and

contends that Plaintiff would have been terminated regardless of her absence from August

23 through 31.  In any event, when Ms. Lusk called Plaintiff shortly after 1:00 p.m. on

August 23, Plaintiff told her she was on the way to a hospital because she was not feeling

well, and was suffering from dizziness and a headache.  Plaintiff drove to a walk-in clinic

near her home where she presented with the chief complaints of headache and dizziness

and high blood pressure.  The clinic referred her to the emergency room (ER).

Plaintiff complained of jaw pain in addition to the other symptoms at the ER.  She

was treated for high blood pressure, and the CAT scan she received did not reveal any

infection.  The ER physician ordered her to follow-up with an oral surgeon.  Work was

not discussed with the ER doctor.

On Friday, August 24, 2007, Plaintiff called Lusk before work and told her about

the events that occurred the day before.  The exact content of the conversation differs

slightly between Plaintiff's version and Lusk's version.  Plaintiff's laptop was delivered

to her at home, and she did perform some work from home that day.  Perhaps the most

glaring discrepancy is whether Plaintiff told Lusk that she would be taking a few days off due to her medical condition.

After the weekend, on Monday, August 27, 2007, Plaintiff did not return to work. Plaintiff claims she had a conversation with Lusk on August 27, and informed her that she was unable to work, had a doctor's appointment scheduled, and had pain due to temporomandibular joint (TMJ) disorder and an infection in her jaw. Plaintiff saw her dentist on August 27, and the dentist determined that she had an infection in her jaw that possibly required teeth extraction. Her dentist told her to see an oral surgeon for her TMJ issues.

On August 28, 2007, Plaintiff saw her primary care physician for a follow-up on the hypertension she had been treated for on the prior Thursday. Her primary care physician excused her from work, and in the afternoon on August 28, Plaintiff visited her oral surgeon for her TMJ. He prescribed an MRI of her jaw, which was scheduled for August 31.

On August 29, 2007, Plaintiff had a telephone conversation with Lusk, advising her that she would not be going to work that day. Plaintiff told her that the pain medications she was taking rendered her unable to work. Plaintiff told Lusk that she would be unable to work the remainder of the week, and also told her she was having trouble accessing her work e-mail. After the conversation, Plaintiff sent Lusk five e-mails concerning her medical condition. The five e-mails contained copies of prescriptions, an x-ray of her jaw, the ER discharge, and other information covering her

medical condition.  Plaintiff admits she had no further communication with Lusk or anyone associated with Defendant on August 30 and 31.

Plaintiff had the MRI of her jaw taken on August 31.  On August 31, Defendant mailed a letter to Plaintiff terminating her from employment.  Plaintiff had various doctors' appointments and teeth extractions after August 31, 2007.  She  presently claims to be having her TMJ treated non-surgically, and has provided an affidavit of her treating physician to validate these assertions.

In resolving these two motions for summary judgment, the facts will be viewed in the light most favorable to the nonmoving party, as they must be, on each respective motion.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1280 (11th Cir. 2004).  The Court's role is limited to deciding whether there is sufficient evidence upon which a reasonable juror could return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); Morrison v. Amway Corp., 323 F.3d 920, 924 (11th Cir. 2003).

## ARGUMENT

Both parties seek summary judgment on the issues of whether Plaintiff can show that she suffered from a "serious health condition" as that term is defined under the FMLA and whether Plaintiff can show that she provided adequate notice of the need for leave under the FMLA.  With respect to Plaintiff's motion, Plaintiff filed her supporting affidavits one day late without leave of court, which obviously prohibits the granting of

-4-

Plaintiff's motion, nor would this Court have granted summary judgment in her favor had the affidavits been timely and properly authenticated.  With respect to Defendant's motion, Plaintiff did timely file two affidavits in opposition,[1] which this Court will consider in denying Defendant's motion.

*Chronic Serious Health Condition*

Under the FMLA, a "serious health condition" is "an illness, injury, impairment, or physical or mental condition that involves . . . continuing treatment by a health care provider."  29 U.S.C. § 2611(11)(B).  The Department of Labor's regulations further elaborate on what is included in continuing treatment by a health care provider.  One of the five categories describes continuing treatment as a "chronic serious health condition" as follows:

> (iii) Any period of incapacity or treatment for such incapacity due to a chronic serious health condition.  A chronic serious health condition is one which:
> (A) Requires periodic visits for treatment by a health care provider, or by a nurse or physician's assistant under direct supervision of a health care provider;
> (B) Continues over an extended period of time (including recurring episodes of a single underlying condition); and
> (C) May cause episodic rather than a continuing period of incapacity (e.g., asthma, diabetes, epilepsy, etc.).

29 C.F.R. § 825.114(a)(2)(iii).  Moreover, a serious health condition is not confined to one specific condition, but may include a compilation of conditions that may be considered together as one condition.  Price v. City of Fort Wayne, 117 F.3d 1022, 1023

---

[1]  See dockets 57 and 58.

(7th Cir. 1997) (holding that "assemblage of diagnoses including elevated blood pressure, hyperthyroidism, back pain, severe headaches, sinusitis, infected cyst, sore throat, swelling throat, coughing and feelings of stress and depression" constitutes factual issue sufficient to go to trier of fact as to whether "serious health condition" exists under FMLA).

Based on these criteria, and taking the facts in the light most favorable to Plaintiff, the non-moving party, Plaintiff's condition may be described as a chronic serious health condition, sufficient to defeat summary judgment.  The record supports a finding that Plaintiff suffered from TMJ since 2002.  Dr. Castellano described Plaintiff's TMJ as chronic in his deposition, with "complete anterior dislocation or herniation of both TMJs."  The MRI taken on August 31, 2007, reveals increased fluid in muscles around the left TMJ and joint effusion in the right TMJ.  Dr. Boland, her treating physician, opines that her severe pain is consistent with the diagnosis of TMJ disorder, both in August 2007 and presently.  Dr. Boland further opines that she will suffer periodic episodes of severe pain three to four times a year.  Additionally, Dr. Castellano renders an opinion that Plaintiff could experience pain at times that would hinder her ability to talk or work.  The record reveals that once she regained gainful employment with benefits, she began non-surgical treatment for her TMJ disorder by using a splint in October 2008.[2]

---

[2]  Plaintiff takes the position that she was terminated before she could begin the treatment regimen.

*Serious Medical Condition Requiring Continuing Treatment*

Plaintiff has also submitted sufficient materials to avoid summary judgment on the issue of whether Plaintiff's condition falls within another category articulated under the regulations describing continuous treatment.  "Continuing treatment" includes treatment two or more times by a health care provider as described in the first of the five categories under continuing treatment:

> (I) A period of incapacity (i.e., inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom) of more than three consecutive calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves:
> (A) Treatment two or more times by a health care provider, by a nurse or physician's assistant under direct supervision of a health care provider, or by a provider of health care services (e.g., physical therapist) under orders of, or on referral by, a health care provider; or
> (B) Treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider.

29 C.F.R. § 825.114(2)(i)(A)(B).

The submissions in this case show that Plaintiff suffered from TMJ disorder and infection in her jaw, which caused her pain.  Plaintiff received treatment on not less than four separate occasions beginning August 23 when she presented to the ER.  She was diagnosed with a jaw infection on August 27, was evaluated by an oral surgeon for TMJ disorder on August 28, was treated with a root canal on September 4 when it was determined that she would need two teeth extracted, and had a follow-up visit with her

oral surgeon on September 10 for a treatment plan for her TMJ disorder.  Based on these submissions in the record, Plaintiff has successfully defeated summary judgment on this issue.[3]

### *Plaintiff's Affidavit is Sufficient*

Having determined that the issue of whether Plaintiff's medical condition may fall within FMLA's criteria for coverage, the Court notes that Plaintiff's submissions create a genuine issue of fact, which should be left for the trier of fact.  Although the Eleventh Circuit has not specifically decided the issue of whether the existence of a "serious health condition" may be proven by lay opinion, rather than expert testimony, case law from other circuits lends support to the proposition that a plaintiff's declaration alone is adequate to avoid summary judgment for the employer.  See, e.g., Lubke v. City of Arlington, 455 F.3d 489, 495-96 (5th Cir. 2006) (holding that husband's leaving work to take care of wife's episodic back problems was sufficient lay testimony to create issue of fact for jury regarding whether wife suffered from "recurring, chronic back pain as defined by this regulation.").[4]

---

[3]   The Court has not overlooked the cases cited by Defendant holding that complicated and serious dental issues were not found to constitute "serious medical conditions" under the FMLA.  In any event, the Court cannot unequivocally find that Plaintiff's health condition, on summary judgment, does not constitute a serious one, worthy of FMLA protection.

[4]   See also Rankin v. Seagate Tech., Inc., 246 F.3d 1145, 1149-50 (8th Cir. 2000) (holding that plaintiff's affidavit stating that she was "too sick to work" created genuine issue of material fact about her medical condition); Marchisheck v. San Mateo County, 199 F.3d 1068, 1074 (9th Cir. 1999) (holding that plaintiff's declaration that she "did not

In this case, Plaintiff was absent from work from August 23 through 31, during which period she presented documentation of hypertension, TMJ disorder, dizziness, and headaches.  Defendant may not use any absence or scarcity of expert medical opinion from physicians visited between August 23 and 31, 2007, in order to show that Plaintiff provided no evidence of a serious medical condition, particularly in view of the fact that there is no evidence that Defendant requested such information.  The jury will hear from Dr. Boland, Plaintiff's treating physician, that Plaintiff suffers from a "significant" case of TMJ, that Plaintiff has had several episodic periods each year in which her TMJ causes significant pain, and that Plaintiff's complaints are consistent with a diagnosis of TMJ disorder as corroborated by the MRI taken on August 31.  Moreover, Dr. Castellano testified that Plaintiff had "chronic" TMJ, requiring three to four months of treatment in a splint and the administration of muscle relaxers and anti-inflammatory medication.  Based on these submissions, summary judgment may not be entered.

### *Notice of Need for FMLA Leave*

Plaintiff argues that the need for FMLA leave was unforeseeable from August 23 through 31 and therefore Plaintiff needed only to "provide her employer with notice sufficient to make the employer aware that her absence is due to a potentially FMLA-qualifying reason."  Gay v. Gilman Paper Co., 125 F.3d 1432, 1436 (11th Cir. 1997).  What constitutes sufficient notice of a potentially qualifying reason varies.  See Cooper v.

---

and could not do anything for four or five days" created genuine issue of material fact with respect to incapacity).

Fulton County, Ga., 458 F.3d 1282 (11th Cir. 2006) (holding that statement to employer that he was sick, followed up by faxed letter the next day advising of blurred vision, extreme headaches, passing out, and the need for leave, sufficient notice under FMLA); Tenney v. Total Renal Care, Inc., No. 8:05-cv-662-T-23MAP, 2006 WL 2038515 (M.D. Fla. Jun. 22, 2006) (finding that pregnant employee's advising employer that she was suffering from high blood pressure, severe swelling, and was at risk for toxemia, constituted sufficient notice to shift burden to employer to determine whether leave was FMLA-qualifying); Tornberg v. Business Interlink Servs., Inc., 237 F.Supp.2d 778, 785 (E.D. Mich. 2002) (finding that verbal advisement that time off was needed for kidney stone was sufficient to shift burden to employer to obtain additional information). The Court finds in this case that Plaintiff's submissions establish that she gave sufficient notice, at least to avoid summary judgment.

According to Plaintiff, she told Lusk the exact nature of her medical conditions and told her the anticipated duration of her leave—from August 23 through 31. Plaintiff had numerous conversations with Lusk beginning August 23 when she went to the ER. On August 24, she had a telephone conversation with Lusk advising her that she was unable to work given the pain she was suffering from TMJ disorder and a jaw infection. On August 27, Plaintiff talked to Lusk on the telephone and told her she could not work because she was in pain from her jaw and had several doctors' appointments scheduled. On August 28, she telephoned Lusk and told her she could not work due to the pain. On August 29, she told Lusk that she could not work the rest of the week, which was

Thursday and Friday, due to her medical condition.  On that same day, Plaintiff sent five

e-mails to Lusk providing additional information regarding her health condition.

Defendant never asked Plaintiff for medical certification of her need to leave.  The parties

dispute whether Defendant requested documentation that Plaintiff could not work.

According to Plaintiff, Defendant asked only that she provide information that she had

seen a doctor, and Plaintiff provided that information on August 29.  As to the duration of

her leave, Plaintiff told Lusk on August 29 that she would not be working through August

31, and would update Lusk on September 3.  Based on the genuine issues of material fact

in this record, summary judgment cannot be entered

It is therefore **ORDERED AND ADJUDGED** as follows:

(1)     Defendant's Motion for Summary Judgment (Dkt. 21) is **DENIED**.

(2)     Plaintiff's Motion for Summary Judgment (Dkt. 35) is **DENIED**.

**DONE AND ORDERED** at Tampa, Florida, on December 16, 2008.


_____s/_Richard A. Lazzara_____
**RICHARD A. LAZZARA**
**UNITED STATES DISTRICT JUDGE**


<u>**COPIES FURNISHED TO**</u>:
Counsel of Record